## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN FRANK GROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-269 |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| WARDEN WILLIAM SCHOPPE; *ET AL.*, | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER:

On March 2, 2012, Plaintiff in the above-captioned case submitted for filing a Civil Rights Complaint in the United States Court for the Western District of Pennsylvania. Thereafter, Plaintiff filed three motions for preliminary injunctive relief.[1]  Because it was not entirely clear what type of relief Plaintiff was seeking in these motions, on May 3, 2012, the Court conducted a telephonic hearing during which the Court took testimony regarding Plaintiff's claims.  For the reasons that follow, the motions for preliminary injunctive relief will be denied.

This Court has discretion to grant preliminary injunctive relief under Fed. R. Civ. Proc. 65.  The party seeking a preliminary injunction has the burden of demonstrating:  1) a reasonable probability of success on the merits; 2) irreparable harm if the injunction is denied; 3) that the issuance of an injunction will not result in greater harm to the non-moving party; and 4) that the public interest would best be served by granting the injunction.  Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997); Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); Opticians Ass'n of America v. Independent Opticians of America,

---

[1]  The parties consented to jurisdiction by a United States Magistrate Judge.  *See* ECF Nos. 10, 38, 39; *see also* 28 U.S.C. § 636(c)(1).

920 F.2d 187, 191-92 (3d Cir. 1990). Initially, it is the movant's burden to demonstrate both that he is reasonably likely to succeed on the merits and that he is likely to experience irreparable harm without the injunction. Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000). If both of these factors are shown, the effect on the nonmoving parties and the public interest (the third and fourth prongs) may be considered by the court. *Id.* at 484. However, if the record does not support a finding of both irreparable injury and a likelihood of success on the merits, then preliminary injunctive relief cannot be granted. Marxe v. Jackson, 833 F.2d 1121 (3d Cir. 1987).

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The purpose of the preliminary injunction is to preserve the *status quo* until the rights of the parties can be fairly and fully investigated and determined by strictly legal proofs and according to the principles of equity. Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

With respect to preliminary injunctions sought by inmates, courts are further limited by federal statute as follows.

(2) Preliminary injunctive relief.--In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief. . . .

2

18 U.S.C.A. § 3626(a)(2).

The plaintiff bears the burden of establishing a "clear showing of irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, 493 U.S. 848 (1989); ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (it is not enough to merely show irreparable harm: the plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which cannot be redressed with money damages). An injunction is not issued simply to eliminate the possibility of a remote future injury. Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir. 1994).

In his claims for preliminary injunctive relief, Plaintiff requests that this Court order Defendants to refrain from coming into contact with him, refrain from harassing him, refrain from tampering with his mail, allow him to make unlimited copies for his litigation, remove him from the restricted housing unit (RHU) and provide him with mental health treatment.

Plaintiff's requests for preliminary injunctive relief are directed not merely at preserving the *status quo*; instead, they seek mandatory relief. In this situation, the burden on the moving party is particularly heavy. *See* Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980); Acierno, 40 F.3d at 653. Moreover, in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration. Rush v. Correctional Medical Services, Inc., 287 Fed. App'x 142, 144 (3d Cir. 2008) (citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995). Where a plaintiff requests an injunction that would require the Court to interfere with the administration of a state prison, "appropriate consideration must be given to

3

principles of federalism in determining the availability and scope of equitable relief." Rizzo v. Goode, 423 U.S. 362, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. Beard v. Banks, 548 U.S. 521, 528 (2006); Bell v. Wolfish, 441 U.S. 520, 527 (1979).

During the hearing, it was discovered that on or about April 17, 2012, Plaintiff was removed from the RHU and placed in the Special Needs Unit (SNU), a transition housing arrangement between the RHU and general population. It was further discovered that Plaintiff is receiving ongoing mental health treatment and currently is receiving several medications including Thorazine, Elivil and Prozac. In addition, Defendants testified that Plaintiff's assault claim concerning the coffee incident had been referred to the District Attorney of Beaver County. Finally, it was discovered and that the jail had made over 1000 pages of copies for Plaintiff and that it only refused to make copies of documents that Plaintiff previously had copied. To this end, he was told that if he needed copies of new documents, the jail would consider his request.

As an initial matter, the Court notes that it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, Plaintiff has no constitutionally protected right not to be housed in the RHU.

4

Moreover, Defendants are not constitutionally obligated to make unlimited copies for Plaintiff. Despite his indigence, Plaintiff is required to bear his own costs for this litigation.  Tabron v. Grace, 6 F.3d 147, 159-60 (3d Cir. 1993).  A prison's reasonable accommodation of an inmate's indigency does not require it to ensure that prisoners receive unlimited access to the prison's limited resources.

In addition, Plaintiff does not have a constitutional right for the jail not to open his non-legal mail.  Correspondence between inmates is not considered legal mail and is not protected from scrutiny by prison officials.  Moreover, it is well established that allegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983.  See, e.,g., Burkholder v. Newton, 116 Fed. App'x 358, 360 (3d Cir. 2004); Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.) (mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations), cert. denied, 464 U.S. 998 (1983); Wilson v. Horn, 971 F. Supp. 943 (E.D. Pa. 1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), aff'd, 142 F.3d 430 (Table) (3d Cir. 1998).  No matter, then, how reprehensible the conduct alleged in the complaint may be, such conduct, if as alleged, is not violative of rights secured to the Plaintiff under the Constitution or the laws of the United States.

Finally, decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine, are not subject to judicial fiat.  Indeed, it has long been recognized that the exercise of prosecutorial discretion is a matter, "particularly ill-suited to

5

judicial review." Wayte v. United States, 470 U.S. 598, 607 (1985). *Accord* Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.").

Bearing all of this in mind, it is clear from the testimony adduced at the hearing that the majority of Plaintiff's claims for injunctive relief have become moot. In this regard, Plaintiff has been moved from the RHU and he is receiving ongoing mental health treatment. With regard to his request to make copies, Plaintiff was informed that he need not send Defendants' counsel separate copies of his pleadings as they would accept service of Plaintiff's pleadings through access to the Court's electronic docketing system. In addition, Plaintiff was told that he would be able to make reasonable copies of documents as needed, just not repetitive copies of the same document.

With regard to the remainder of Plaintiff's claims for injunctive relief, while the Court does not wish to diminish his complaints, Plaintiff's testimony and allegations fail to show any immediate, irreparable injury that will result from the Court's denial of his motions that cannot be compensated with money damages.[2]  Such relief, if necessary, should be required only after a full review of the relevant facts and law. Further, the granting of injunctive relief in this case could harm both the Defendants' and the public's interest as it would result in the federal courts making *ad hoc*, individual, decisions concerning the treatment of a single prisoner. Therefore, consideration of whether granting preliminary relief will result in even greater harm to the

---

[2]  It is noted that the Court is allowing Plaintiff leave to file an Amended Complaint to add any additional claims or defendants concerning the issues that he raised in his motions for injunctive

nonmoving party and whether granting the preliminary relief will be in the public interest weighs against granting relief in this case. Accordingly, Plaintiff's motions for preliminary injunctive relief will be denied. An appropriate Order follows.

**AND NOW**, this 5th day of May, 2012:

**IT IS ORDERED THAT** Plaintiff's Motion to Show Cause for a Temporary Restraining Order (ECF No. 16) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Show Cause for a Temporary Restraining Order (ECF No. 35) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Show Cause for a Temporary Restraining Order (ECF No. 40) is **DENIED**.

Cynthia Reed Eddy
United States Magistrate Judge

May 4, 2012

Norman Frank Gross
Beaver County Jail
6000 Woodlawn Boulevard
Aliquippa, PA 15001

relief and during the hearing.

7